LETTS, Chief Judge.
This is an appeal from a final order entered by the Board of Real Estate, adopting the hearing officer’s findings of fact and conclusions of law and suspending the appellant Broker’s license for two years. We affirm.
The facts reveal that there were more buyers for condominium units in Century Village than there were apartments readily available. Apparently, speculators would sign purchase and sale contracts to buy more than one apartment and then agree to assign their rights under the contracts to subsequent purchasers seeking apartments, but unable to obtain them, for sums ranging between $500 and $1,500 per assignment.
The instant case basically involves four such transactions where subsequent purchasers actually closed on the apartments, paying monies in excess of the contract price, said excess being the sum necessary to buy out of the original contract purchaser and assume his contract. These excess sums were paid by check directly to the Broker in order to buy out the “options” held by the original contract purchasers. It is undisputed that the Broker did not deposit these checks in his escrow account, but instead deposited them in his personal account. However, it is also undisputed that the Broker did later distribute the sums represented by these excess checks to the proper recipients, i. e. the original contract purchasers who had sold their contracts.
Notwithstanding, the Board of Real Estate found the actions of the Broker (who was actively engaged in selling these condominiums in Century Village) in depositing these checks to his personal account were in violation of Section 475.25(l)(i), Florida Statutes (1977) which requires a broker to immediately place all sums entrusted to him in his capacity as a broker, in an escrow account until disbursement thereof is properly authorized. We agree.
Basically the Broker, in the words of his counsel, argues on appeal as follows:
First, the monies which [The Broker] passed on to the option-holder had nothing to do with the real estate transaction itself which took place between the buyer and the seller. The buyer in this case was buying at the seller’s price. We are not concerned with a deposit on the purchase price, which admittedly would have to be deposited into an escrow account. Rather, we are concerned with monies going from the potential buyer to a person holding the option to purchase. This was an agreement separate and apart from the real estate transaction. [The Broker] simply passed the payment from potential buyer to option-holder. [The Broker] was merely acting as a conduit. This is particularly important since the Commission did in fact find that [The Broker] did in fact convey the monies on to the people who held the options to purchase, and personally realized nothing from the transactions.
Secondly, the monies did not have to be placed in escrow because disbursement was authorized immediately. Section 475.25(l)(i), Florida Statutes (1977) provides that funds must be placed in escrow “until disbursement ... is ... authorized.” That requirement is to protect parties dealing with a broker or salesman to the extent that monies, which will not be disbursed until some later date, are required to be placed in an escrow account (such as with a down payment).... In *1000 this case [The Broker] was authorized at the moment he received the payments from the potential buyers to convey the money on to the option-holders. Certainly he was not required to place the monies in escrow and then get permission to disburse the funds to the option-holders. This was simply not the type transaction that falls within the requirement of Section 475.25(l)(i), Florida Statutes that monies be placed in escrow until “disbursement is properly authorized.”
We can think of no better arguments than the above quoted, but the inescapable facts show that the Broker acted as the broker in all four transactions, commencing with the original contract and culminating in the eventual closing to the subsequent purchasers who purchased the “options.” These excess checks to buy out the “options” were an essential part of the final culmination. They were entrusted to the Broker and he was not entitled to any of the proceeds therefrom. All this being so, the cited statute appears apropos and any “option” funds had no business being commingled in the Broker’s personal account, no matter how immediately the disbursement was authorized.
As to the penalty imposed, we agree that two years suspension appears unduly harsh. No one was cheated, no secret commissions were earned and the sums in question were trifling compared to the sales price of the apartments. However, the penalty imposed was within the permissible range established under the statute which the Broker violated. Accordingly, under the authority of Florida Real Estate Commission v. Webb, 367 So.2d 201 (Fla.1978) we must affirm it.
We find no merit in the remaining point on appeal.
AFFIRMED.
MOORE and GLICKSTEIN, JJ., concur.